UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ANZOR I.,

                    Petitioner,

          v.

ICE FIELD OFFICE DIRECTOR, et al.,

                    Respondents.

No. 2:26-cv-0383-TLN-CSK

A # 246-683-428


**ORDER**

This matter is before the Court on Petitioner Anzor I.'s ("Petitioner") Petition for Writ of Habeas Corpus (ECF No. 1) and Respondents' Motion to Dismiss (ECF No. 6).  The habeas petition is fully briefed.  (ECF Nos. 7, 15.)  Petitioner filed an opposition to Respondents' motion. (ECF No. 14.)  Respondents did not file a reply.  For the reasons set forth below, Petitioner's habeas petition is GRANTED.  (ECF No. 1.)  Respondents' Motion to Dismiss is DENIED. (ECF No. 6.)

///

///

///

///

///

///

1

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner is a noncitizen who entered the United States with his wife and three minor children on December 30, 2022.  (ECF No. 1 at 6–8.)  Petitioner and his family were immediately paroled into the United States by the Department of Homeland Security ("DHS").  (*Id.* at 6.)  Petitioner's release was done "in the discretion of U.S. Customs and Border Protection[.]"  (*Id.* at 10.)  As a condition of parole, Petitioner was required to "report to the Immigration and Customs Enforcement (ICE) Office near [his] final destination within 60 days or face removal from the United States."  (*Id.* at 9.)  Petitioner and his family checked-in as ordered.  (ECF No. 15 at 2.)

On February 9, 2023, Petitioner and his wife applied for asylum and withholding of removal.  (ECF No. 15-1.)  On April 17, 2023, ICE Enforcement and Removal Operations ("ERO") cancelled Petitioner's Notice to Appear.  (ECF No. 7-1 at 3.)  Petitioner received a Social Security number and employment authorization.  (ECF Nos. 15-2, 15-3.)

Following release, Petitioner and his family resided in Roseville, California.  (ECF No. 1 at 58.)  Petitioner obtained his high school diploma.  (*Id.* at 12.)  He became a certified nursing assistant.  (*Id.* at 14.)  He registered as a nurse assistant with the California Department of Public Health.  (*Id.* at 15.)  He attended Sierra Community College.  (*Id.* at 16.)  He maintained steady employment and paid taxes.  (*Id.* at 18–22, 51.)  He also supported his wife and their three children, now aged 10, 16, and 19 years old.  (*Id.* at 2, 41–45.)

In mid-2025, Petitioner was arrested in Placer County.  (ECF No. 15 at 3.)  On January 8, 2026, Petitioner pled no contest to two counts of receiving stolen property.  (ECF No. 1 at 26.)  He was sentenced to a term of 360 days in custody with full credit for time served, which was approximately six months, and placed on a 2-year term of probation.  (*Id.*)  Because Petitioner received a sentence of under a year of imprisonment, the offense was not an aggravated felony.  (ECF No. 15 at 3.)

Upon release from Placer County Jail on January 8, 2026, Petitioner was immediately detained by ICE as he exited from the public lobby area of the jail.  (ECF No. 7-1 at 2.)  The record indicates ICE did not obtain a warrant prior to the arrest and instead intended to serve Petitioner with a warrant and Notice to Appear after he was detained.  (*Id.* at 3.)  Prior to this

2

Court ordering his release (ECF No. 18), Petitioner was detained at the California City Detention Center without a hearing for over two months (ECF No. 1 at 1; ECF No. 15 at 3).

On January 26, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus challenging the lawfulness of his civil detention and seeking immediate release.  (ECF No. 1.) Petitioner filed his petition through his "next friend," Ms. I.  (*Id.*)  On February 25, 2026, the Court appointed counsel for Petitioner.  (ECF No. 12.)

**II.     MOTION TO DISMISS**

As an initial matter, Respondents move to dismiss Petitioner's habeas petition on the basis that the pro se filing by Petitioner's "next friend" does not establish standing.  (ECF No. 6 at 1.) In opposition, Petitioner explains why he was unable to litigate the matter on his own and how his "next friend," Ms. I., is dedicated to his best interests.  (ECF No. 14 at 1–4.)

An "[a]pplication for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf."  28 U.S.C. § 2242. Individuals appearing on behalf of detained prisoners unable to seek relief themselves are known as "next friends."  *Whitmore v. Arkansas*, 495 U.S. 149, 162 (1990).  "A 'next friend' does not [herself] become a party to the habeas corpus action in which [she] participates, but simply pursues the cause on behalf of the detained person, who remains the real party in interest."  *Id.* at 163.  To have standing, the "next friend" must establish: "(1) that the petitioner is unable to litigate his own cause due to mental incapacity, lack of access to court, or other similar disability; and (2) the next friend has some significant relationship with, and is truly dedicated to the best interests of, the petitioner."  *Massie ex rel. Kroll v. Woodford*, 244 F.3d 1192, 1194 (9th Cir. 2001).  Additionally, to proceed as a "next friend" on a habeas petition, the "next friend" must be represented by counsel as pro se litigants have no authority to represent anyone other than themselves.  *Cheema v. Warden*, No. 1:26-CV-00203-DC-DMC, 2026 WL 124841, at *2 (E.D. Cal. Jan. 16, 2026) (citing *Johns v. County of San Diego*, 114 F.3d 874, 877 (9th Cir. 1997); *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008)).

The Court finds Ms. I. has established standing to proceed as "next friend" on behalf of Petitioner, her spouse.  First, while in detention, Petitioner was "deprived of a meaningful

opportunity to prepare for his immigration proceedings or assist in his defense." (ECF No. 1 at 1.) Petitioner is a Russian-speaker without sufficient language ability in English to prepare his own habeas petition. (ECF No. 14 at 1.) At the facility where Petitioner was detained, there was no Russian-speaker who could help Petitioner prepare his petition and legal materials provided on electronic tablets were only available in English. (*Id.* at 1, 4.) Petitioner's ability to prepare his own petition was also impacted by deteriorating mental health and not consistently receiving his prescribed mental health medication. (ECF No. 1 at 2.)

Second, Ms. I. has a significant relationship with Petitioner as she is his wife of nearly 20 years, and they share three children. (*Id.* at 39, 41–46.) Ms. I.'s affidavit and multiple exhibits filed with the habeas petition demonstrate she is truly dedicated to Petitioner's best interests. (*Id.* at 3–64.)

Finally, Ms. I. proceeds in this action with the representation of counsel. (ECF No. 12.)

Accordingly, the Court finds Ms. I. has "next friend" standing to file a habeas petition on behalf of Petitioner and properly proceeds in this action with representation. Respondents' Motion to Dismiss is therefore DENIED. (ECF No. 6.)

### III.   HABEAS PETITION

#### A.   Standard of Law

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

B.      Analysis

Petitioner claims his detention violates the Due Process Clause.  (ECF No. 1 at 2.)  In opposition, Respondents contend Petitioner is an "applicant for admission," subject to the mandatory detention scheme of 8 U.S.C. § 1225(b)(2)(A) ("§ 1225(b)(2)").  (ECF No. 7 at 1.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent.").  These due process rights extend to immigration proceedings, including detention and deportation proceedings.  *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

i.   *Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.  "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

The Court finds Petitioner has a protected liberty interest in his continued freedom.  After Petitioner was released from immigration detention, he developed significant "enduring attachments to normal life." *Morrissey*, 408 U.S. at 482.  Petitioner established a life with his family in Roseville, obtained his high school diploma, attended college, maintained steady

employment, and supported his wife and children. That Petitioner's detention by ICE occurred immediately upon his release from criminal detention after being sentenced to time served amplifies the significance of his liberty interest. Like the parolee in *Morrissey*, freedom would "enable[ ] [Petitioner] to do a wide range of things open to persons who have never been convicted of any crime." 408 U.S. at 481–82. These include the opportunity to "be gainfully employed and [ ] free to be with family and friends[.]" *Id.* Petitioner thus has a significant interest in his liberty protected by the Fifth Amendment.

The Court is not persuaded by Respondents' argument that Petitioner is an "applicant for admission" subject to mandatory detention under § 1225(b)(2). Courts throughout the Ninth Circuit, including this one, have repeatedly rejected Respondents' position. *See e.g.*, *Hortua v. Chestnut*, No. 1:25-CV-01670-TLN-JDP, 2025 WL 3525916, at *3 (E.D. Cal. Dec. 9, 2025); *Estrada-Samayoa v. Cruz*, No. 1:25-CV-01565-EFB, 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases). "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). In comparison, "[t]he government's proposed interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025) (collecting cases). Respondents put forth no new arguments or facts justifying reconsideration in this case.

Accordingly, the Court finds Petitioner has a clear interest in his continued liberty protected by the Due Process Clause.

### ii. Process Required

Having found Petitioner possesses a protected liberty interest, the Court next examines what process is necessary to ensure any deprivation of that interest accords with the Constitution.

6

The Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). The *Mathews* factors support requiring Petitioner receive notice and a hearing before a neutral decisionmaker prior to re-detention.

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by the Government's actions detaining him. As an individual released after serving his criminal sentence, Petitioner has a profound interest in his return to liberty. *See Johnson v. Williford*, 682 F.2d 868, 873 (9th Cir. 1982) (concluding that re-incarcerating a parolee released from custody would be "inconsistent with fundamental principles of liberty and justice.").

Second, the risk of erroneous deprivation of Petitioner's liberty interest is considerable. "Civil immigration detention, which is 'nonpunitive in purpose and effect,' is justified when a noncitizen presents a risk of flight or danger to the community." *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025). Petitioner has been released from incarceration twice: first, from immigration custody on parole, and second, from criminal detention after a sentence for time served. As Petitioner has received virtually no procedural safeguards before he was re-detained by immigration authorities, the risk that he is being detained without justification is high. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Third, the Government's interest in detaining Petitioner without notice and a hearing is negligible. Custody hearings in immigration court are "routine and impose a 'minimal' cost," and the Government's interest is further diminished where, as here, Petitioner was already found appropriate for release on two separate occasions. *R.D.T.M.*, 2025 WL 2686866 at *6. "The

7

government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994.

Upon consideration of the Mathews factors, the Court finds Petitioner was entitled to notice and a hearing before a neutral decisionmaker prior to his detention.  He received neither. Respondents therefore violated Petitioner's due process rights.

**IV.   CONCLUSION**

For the foregoing reasons, IT IS HEREBY ORDERED:

1.   Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED.

2.   Respondents' Motion to Dismiss (ECF No. 6) is DENIED.

3.   Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present.

4.   The Court has reviewed Petitioner's motion to proceed in forma pauperis (ECF Nos. 16–17) and finds Petitioner has made the requisite showing under 28 U.S.C. § 1915. Petitioner's request to proceed in forma pauperis is hereby GRANTED.

5.   The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: March 19, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

8